**UNITED STATES v. STAYBACK.**
**No. 11100.**

United States Court of Appeals
Third Circuit.

Argued Dec. 7, 1953.

Decided April 21, 1954.

John E. Toolan, Perth Amboy, N. J. (Toolan, Haney & Romond, Perth Amboy, N. J., on the brief), for appellant.

Frederic C. Ritger, Jr., Asst. U. S. Atty., Newark, N. J. (William F. Tompkins, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from a conviction for income tax evasion under Section 145(b) of the Internal Revenue Code, 26 U.S.C. § 145(b).[1]

Before discussing the errors complained of a brief statement of the factual background is in order.

The defendant, William B. Stayback, was indicted on a two-count indictment charging him with filing false and fraudulent income and victory tax returns for 1943 (Count I) and 1944 (Count II). He was found guilty on both counts and sentenced to imprisonment for 18 months and fined $3,000 and costs.[2]

The evidence adduced at the trial established that the defendant during the years covered by the indictment was engaged in the manufacture and sale of metal novelties and souvenirs.

Defendant in his 1943 and 1944 returns listed no other income except that received in the conduct of his business.

In his 1943 return defendant listed his "Total receipts" at $15,000.00. Against this sum he charged, under "Cost of Goods Sold", $3,585.00 for "Material and supplies" and $2,000.00 for reduction in inventory, making "net cost of goods sold", $5,585.00. Under "Other Business Deductions" he claimed a credit of $1,300.00 for "Rent, repairs and other expenses". After applying the $6,885.00 credits claimed against his stated receipts of $15,000.00, the defendant fixed his "Net profit" for 1943 at $8,115.00.

In his 1944 return defendant listed his "Total receipts" at $4,000.00. Against

1. Section 145(b) reads as follows:

"(b) *Failure to collect and pay over tax, or attempt to defeat or evade tax.* Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

2. Defendant was sentenced to imprisonment for a period of 18 months on each count to run concurrently and was fined $1500 on each count and costs of prosecution.

this sum he charged, under "Cost of Goods Sold", $185.61 for "Material and supplies" and $2,000.00 for reduction in inventory, making "Net cost of goods sold", $2,185.61. Under "Other Business Deductions" he claimed a credit of $261.00 for "Rent, repairs and other expenses". After applying the $2,446.61 credits claimed against his stated receipts of $4,000.00, the defendant fixed his "Net profits" for 1944 at $1,553.39.

In both his 1943 and 1944 returns the defendant also took credit for contributions, interest and taxes paid. These deductions, $980.00 for 1943, and $975.00 for 1944, played no part in the determination of the tax evasion issue. They served to reduce his stated "Net income" for 1943 to $7,135.00, and for 1944 to $578.39.

The defendant's tax returns for 1943 and 1944 were prepared by an accountant, John F. Primoshic, at his request.[3] Primoshic testified that before he prepared the returns he asked defendant for his books and records and was told that he had none; that defendant advised him he was only able to give him an estimate of $15,000.00 "Total receipts" for 1943 and $4,000.00 for 1944. The calculations stated in the returns as to "Net cost of goods sold" and "Other Business Deductions" (except rent) were computed by Primoshic on a percentage basis based on his familiarity with the defendant's particular type of business and his general accounting experience. Primoshic further testified that at the time the tax returns were prepared the defendant expressed agreement with his calculations and accepted and adopted them as his own.

Various government witnesses testified that during 1943 and 1944 defendant had operated his business not only as the W. S. Novelty Co. but also as Clifford Allen, S. Pannone, George Wilson Specialty Co., Harlem Chromium Plating Co. and Universal Alarm Corp.[4]

Testimony relating to the defendant's operations was given by his employees and those of various concerns to whom he made sales during 1943 and 1944, and by John George Cassidy, Internal Revenue Agent and certified public accountant. Cassidy had made an exhaustive examination of the books and records of concerns to whom the defendant had made sales.

As to 1943: Cassidy testified that his investigation had disclosed that the defendant that year had made sales of $104,667.38 in his operations under the following guises; as W. S. Novelty Co., $4,627.95; as Clifford Allen, $24,549.85; as S. Pannone, $25,321.85; as George Wilson Specialty Co., $46,310.06; as Harlem Chromium Plating Co., $1,656.20 and as Universal Alarm Corp., $2,201.-47.[5] The $104,667.38 sales enumerated

---

3. The 1943 and 1944 returns were "delinquent returns", filed during an investigation of the defendant's affairs by the Internal Revenue Bureau which got under way late in 1945. The 1944 return was filed on April 17, 1946, some six months prior to the filing of the 1943 return on October 9, 1946.

4. Clifford Allen, an employee of the defendant, testified that the defendant had operated under his name and that of George Wilson at one time; Lyle Freeman, an employee of the defendant, testified that the defendant operated for a time under the name of Universal Alarm Corp.; Irving D. Friedlander, a certified public accountant testified that for a brief time defendant operated under the name of Harlem Chromium Plating Co.; and John George Cassidy, an Internal Revenue Agent, testified that the defendant operated under the name of S. Pannone.

5. Following is an itemized breakdown of the sales made by the defendant during 1943:

As W. S. Novelty Co.:
$3131.10 to Arrow Novelty Co.
1496.85 to Epstein Novelty Co. $4,627.95

exceeded by $89,667.38 the $15,000 "Total receipts" listed by the defendant in his 1943 tax return.

As to 1944: Cassidy testified that his investigation had disclosed that the defendant that year had made sales of $59,373.40 in his various trading identities; as W. S. Novelty Company, $35,807.11; as Clifford Allen, $18,143.53; as Harlem Chromium Plating Company, $5,422.16.[6] The $59,373.40 sales enumerated exceeded by $55,373.40 the $4,000.00 "Total receipts" listed by the defendant in his 1944 tax return.

Defendant does not dispute the accuracy of the government's testimony that he understated his *gross income* by $89,667.39 in 1943 and $55,373.40 in 1944.

But says he, it is not enough for the government to establish that his *gross sales* exceeded that which he reported in his tax returns; it must go further and establish that his *net income* was in excess of that which he reported. On this score he complains that while the government established that his gross sales were almost seven times the amount which he reported for 1943 and fifteen times the amount reported for 1944, it failed to take into account that his costs of operation must have been proportionately in excess of that which he reported. Had the government, says the defendant, established his costs of operation and given him credit for them against the total of his gross sales, there

```
As Clifford Allen:
 $15,343.86 to Arrow Novelty Co.
 7,143.49 to Epstein Novelty Co.
 2,062.50 to Goldfarb Novelty Co. 24,549.85

As S. Pannone:
 $13,411.85 to Arrow Novelty Co.
 11,910.00 to Goldfarb Novelty Co. 23,312.85

As George Wilson Specialty Co.
 $32,689.46 to Arrow Novelty Co.
 4,749.60 to Epstein Novelty Co.
 8,871.00 to Goldfarb Novelty Co. 46,310.06

As Harlem Chromium Plating Co.
 $1,656.20 to Arrow Novelty Co. 1,656.20

As Universal Alarm Corp.
 $2,201.47 to Epstein Novelty Co. 2,201.47
 _____
 $104,667.38
```

6. Following is an itemized breakdown of the sales made by the defendant during 1944:

```
 As W. S. Novelty Co.
 $35,807.71 to Arrow Novelty Co. $35,807.71

 As Clifford Allen
 $12,997.35 to Arrow Novelty Co.
 1,824.68 to Epstein Novelty Co.
 2,011.00 to Goldfarb Novelty Co.
 1,310.50 to Hamilton Art Metals 18,143.53

 As Harlem Chromium Plating Co.
 $1,921.58 to Arrow Novelty Co.
 3,500.58 to Goldfarb Novelty Co. 5,422.16
 _____
 $59,373.40
```

would have been no excess of net income over that which he reported.

The crux of the defendant's contention is that the government was charged under the law with the burden of establishing (1) defendant's gross sales were higher than reported; (2) his deductible operating costs; and (3) that his net income (after deduction of his operating costs from gross sales) was in excess of that which he had reported.

Because of his view that the government was under the burden stated, the defendant made virtually no attempt to establish that his deductible operating costs exceeded those which he reported in his tax returns.

Defendant has made his bed and he must lie in it. He was wrong in his view that the burden is on the government to establish his allowable operating costs and other deductions.

█ It is well settled that once the government establishes unreported income of the defendant and allows deductions claimed by him in his tax return and others that it can calculate without his assistance, the burden is on the defendant to prove that he had other allowable deductions which were not shown in his return: United States v. Smith, 3 Cir., 1953, 206 F.2d 905; United States v. Link, 3 Cir., 1953, 202 F.2d 592; United States v. Hornstein, 7 Cir., 1949, 176 F.2d 217. The government is not required to prove the negative, i. e. that the defendant did *not* have any other deductions. Gariepy v. United States, 6 Cir., 1951, 189 F.2d 459.

Here the government, by its testimony established unreported income of almost $90,000 in 1944 and more than $55,000 in 1943. For 1943 it allowed the operating costs claimed by the defendant in his return for that year and an additional $16,000 or so which it calculated he had spent for payroll costs that year although his return was blank on that score. For 1944 the government allowed the exact operating cost deductions claimed by the defendant in his return for that year. It was unable, it said, to calculate his payroll cost for that year and consequently did not allow him any deductions in that respect as it did for 1943. The defendant had made no claim for payroll costs in 1944.

Under analogous circumstances, it was said in United States v. Hornstein, supra, 176 F.2d at page 220:

"The figures of cost of goods sold, as they were used in preparing his tax returns, were at least admissions by the defendant which the government could utilize in making a prima facie case. The defendant was chargeable with them until he offered credible evidence to show that the figures were in error, and that his costs were greater. * * * The defendant herein was under an obligation to keep correct books and records; he did not do so. Having adopted that course he cannot now sit back and insist that the government prove a complete debit and credit account."

As to defendant's remaining points.

He contends that the trial judge erred in overruling his objection against permitting Primoshic to "refresh" his recollection as to the circumstances attending his preparation of the defendant's tax returns in 1946, by looking at an affidavit which he had given to the government in 1951. The basis of the objection was that the affidavit had not been executed "contemporaneously with the event." It was premised on the holding in Putnam v. United States, 1895, 162 U.S. 687, 695, 16 S.Ct. 923, 926, 40 L.Ed. 1118, that "The very essence * * * of the right to thus refresh the memory of the witness is that the matter used for that purpose be contemporaneous with the occurrences as to which the witness is called upon to testify."

On the score of this objection we observe that we stated in United States v. Riccardi, 3 Cir., 1949, 174 F.2d 883, 888, certiorari denied, 1949, 327 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746:

"It is important to note that Putnam v. United States * * * does

not distinguish between past recollection recorded and present recollection revived. Insofar as the condition of contemporaneity is concerned, that decision is no longer construed as stating an unyielding rule. United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 236, 60 S.Ct. 811, 850, 84 L.Ed. 1129."

It would serve no useful purpose to repeat what we said in Riccardi in holding that the trial judge may in the exercise of his discretion permit a witness to use an earlier statement of his own to refresh his memory and revive a present recollection, and that the existence of the element of contemporaneity is no longer mandatory.[7]

■ Upon review of the record we are of the opinion that the trial judge properly exercised his discretion in permitting Primoshic to inspect the mooted statement.

We note parenthetically that the defendant's contention on the score discussed is to say the least, specious. When Primoshic took the witness stand he identified defendant's tax returns as having been prepared by him; that when requested to prepare the returns he asked the defendant for his books and records but was told none existed; that the only information which the defendant gave him was his gross sales; that the latter constituted his only income. Primoshic was then permitted, over the defendant's objection, to refresh his memory with respect to the preparation of the returns. After reading it he testified that the items shown on the returns with respect to defendant's operating costs (other than rent) were estimated by him on the basis of his familiarity with the defendant's particular type of business and his general accounting experience. There was then introduced in evidence Primoshic's worksheets which he used at the time he prepared the returns. They contained the details of the operating expenses as estimated by Primoshic and as stated in the returns. There was no objection by the defendant to the introduction of his tax returns or Primoshic's worksheets. From that recital it is immediately apparent that there could not possibly have been any prejudice resulting to the defendant by reason of Primoshic being permitted to "refresh" his memory by his inspection of his 1951 statement.

Defendant also contends that the manner in which the trial judge examined two of the government witnesses, Goldfarb and Allen, was calculated to threaten them and witnesses subsequently called with prosecution for perjury, if they failed to answer questions as counsel for the government desired.

■ This argument is without merit unless it can be said that advising a witness (in the absence of the jury) that he is under oath and that perjury will not be tolerated, constitute such intimidation. It appears from the record that both Goldfarb and Allen were extremely vague, if not evasive, in certain portions of their testimony. Under such circumstances the trial judge was warranted in admonishing them that nothing short of the truth would be countenanced. Curtis v. United States, 10 Cir., 1933, 67 F.2d 943; Pasqua v. United States, 5 Cir., 1945, 146 F.2d 522, certiorari denied 1945, 325 U.S. 855, 65 S.Ct. 1183, 89 L.Ed. 1976. Cf. United States v. Rutkin, 3 Cir., 1951, 189 F.2d 431, 440, affirmed 1952, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833. That the trial judge was concerned solely with ferreting out the truth was made abundantly clear when he said to Allen:

"Now, Mr. Allen, here is the situation. I want to tell you one thing about it. The only thing that the Court is interested in is the justice of the situation. If Mr. Stayback is not guilty of any crime, I want him to walk out of this courtroom

---

7. "It is not so important *when* the statement was made or by whom if it serves the purpose to refresh the mind and unfold the truth." Hoffman v. United States, 9 Cir., 1937, 87 F.2d 410, 411. (Emphasis supplied.)

acquitted; but if he is acquitted, I do not want him acquitted on any false testimony. I do not want any false testimony here. All I'm interested in is the truth."

And to those assembled in the courtroom who later might be called as witnesses, he said:

"For the benefit of the witnesses who may be assembled here in the courtroom, whether called by the Government or by the defense, the only thing that the Court insists upon is that when you take your oath that you respect it and that you tell the truth." [8]

██ ██ It is next urged that the trial judge did not treat counsel for the defense with the respect due an officer of the court. Four instances of allegedly disrespectful remarks made by the trial judge to defendant's counsel in connection with rulings on the evidence are brought to our attention. They were part of the familiar give and take of a criminal trial and were not prejudicial. As was declared in Fredrick v. United States, 9 Cir., 1947, 163 F.2d 536, 548 certiorari denied, 1947, 332 U.S. 775, 68 S.Ct. 87, 92 L.Ed. 360:

"It is elementary that a Federal judge has the right to comment on the evidence, and that it is not only his right but his duty to admonish counsel when necessary, provided he does so in temperate language. At no time did the court below preju-

dicially overstep the proprieties in the instant case."

See also, Goldstein v. United States, 8 Cir., 1933, 63 F.2d 609, 613; United States v. Angelo, 3 Cir., 1946, 153 F.2d 247, 252; Moore v. United States, 7 Cir., 1924, 2 F.2d 839, 842. It should be noted that the trial judge in his charge to the jury several times admonished it to disregard any comments made by him during the trial in the course of his rulings.

Defendant contends that certain comments made by the trial judge, in the presence of the jury, at the close of the testimony of one of the defense witnesses, amounted to a departure from judicial impartiality, and influenced the jury against the defendant.

It is no longer an open question that a judge of a court of the United States may, in his discretion, express his opinion on the evidence and the credibility of the witnesses. The only proviso is that the jury should be made to understand that it is in no way bound by any observations of the court, and that it is the sole judge with respect to the issues of fact. See United States v. Rutkin, supra; United States v. Curzio, 3 Cir., 1948, 170 F.2d 354; United States v. Aaron, 2 Cir., 1951, 190 F.2d 144, certiorari denied sub nom. Freidus v. United States, 1951, 342 U.S. 827, 72 S.Ct. 50, 96 L.Ed. 626. In his charge to the jury the trial judge could not have been more explicit on this latter

8. The three cases cited by the defendant in support of his contention are not apposite. In McNutt v. United States, 8 Cir., 1920, 267 F. 670, 673, the circumstances (unlike those of the instant case) justified the appellate court in holding that " * * * the course pursued by the court [below] * * * was very likely to intimidate witnesses subsequently called, to prejudice jurors against the defendant, and to lead them to think that the court was strongly impressed with the view of the defendant's guilt." In Connley v. United States, 9 Cir., 1931, 46 F.2d 53, the interrogation by the trial judge was of such a tenor that it could not help but have a coercive effect on the witnesses. Its plain import was that the trial judge was convinced that the witnesses involved could, and should, identify one of the defendants as a purchaser of still equipment. Finally, in Hunter v. United States, 5 Cir., 1932, 62 F.2d 217, 220, which concerned a prosecution under the National Prohibition Act, "The only conclusion that could reasonably be drawn from the questions objected to was that the [trial] judge did not believe appellant [defendant] was telling the truth about the amount or source of his income, but was thoroughly convinced and was attempting to demonstrate [in the presence of the jury] that appellant was deriving a large income from the illegal transportation and sale of liquor."

point. Accordingly, no error was committed in this regard.

 Defendant's final contention is that the extent of the trial judge's participation in the examination of the witnesses far exceeded the bounds of judicial propriety and operated to deprive the defendant of a fair trial. Upon review of the record we are of the opinion that the trial judge's participation in the examination of witnesses was not of such degree or nature as to be prejudicial. In so stating we note as we did in United States v. Neff, 3 Cir., 212 F.2d 297 " * * * that trial judges should ever keep in mind the manifest dangers of over-participation in the examination and cross-examination of witnesses."

For the reasons stated the judgment of the District Court will be affirmed.