**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Albert B. SNYDER, Defendant-Appellant.**

**No. 24865.**

United States Court of Appeals,
Ninth Circuit.

June 11–15, 1970.

See also 9 Cir., 413 F.2d 288.

Richard G. Sherman (argued), of Sherman & Sturman, Beverly Hills, Cal., for appellant.

David R. Nissen (argued), Asst. U. S. Atty. Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before DUNIWAY, KILKENNY and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge:

Snyder appeals from a judgment of conviction under nine counts of a ten-count indictment. Count one charged a violation of 18 U.S.C. § 401, willful and knowing disobedience of a lawful court order. He refused to testify as a witness in a federal case, after being granted immunity and ordered to testify. Counts two through ten each charged a violation of 18 U.S.C. § 1621, perjury. Each count involved specific perjurious testimony before a federal grand jury. In a court trial, Snyder was found guilty on all counts except count nine.

Snyder does not attack the sufficiency of the evidence on any of the counts. He challenges the district court's failure to grant motions to suppress certain evidence and to dismiss the indictment. In addition he alleges that the judgment imposed violates the Fifth and Eighth Amendments to the Constitution.

### THE FACTS

Snyder was one of many witnesses subpoenaed to appear before a federal grand jury which was investigating interstate activities involving cheating at cards at the Friars Club in Los Angeles. For background, see Gebhard v. United States, 9 Cir., 1970, 422 F.2d 281. Snyder appeared before the grand jury on September 14, 1967, and repeatedly perjured himself. After Snyder testified, his attorney, one Bruce Hochman, called the Assistant United States Attorney, David Nissen. Nissen informed Hochman that Snyder had lied to the grand jury. Hochman said he would attempt to resolve the problem in order to spare Snyder from a perjury indictment. Nissen told Hochman, "that we needed witnesses and would prefer to have Mr. Snyder as a truthful witness in the prospective 'Friars Club' case rather than as a defendant in such a case, or in a perjury prosecution." Hochman told Snyder "that if he told the truth and was accepted by the government as a witness that he would escape indictment." This was explained to Snyder as an informal but reliable procedure and not as a grant of immunity.

Snyder thereafter had talks with the F.B.I. and the United States Attorney, finally telling them what they believed to be the truth, and indicated his willingness to be a witness. He again testified before the grand jury on October 12, 1967. However, when he was subpoenaed to testify in cases evolving from the grand jury's investigation of the Friars Club, he fled the Los Angeles area. He was ultimately arrested in New Jersey and returned to Los Angeles. He re-

fused to testify. Even after he was given a grant of immunity under 47 U.S.C. § 409($l$) he remained silent. He was then charged in the indictment in the present case.

## SUPPRESSION OF EVIDENCE

It is Snyder's contention that the trial court erred in failing to grant his petition that all statements made by him to the F.B.I. after September 14, 1967 and all statements made before the grand jury on October 12, 1967 be suppressed. He argues that all statements that he made after September 14, 1967 were "coerced" because they were made under threat of prosecution for perjury. He also argues that these statements were made in reliance on a promise that he would not be prosecuted for perjury and would not be required to appear as a witness in any trials.

■■ After he testified falsely before the grand jury on September 14, Snyder certainly faced the possibility of a prosecution for perjury. This, however, was his own doing. Section 1621 is always a "threat" to those who choose to perjure themselves. Its purpose is at least two-fold. First, it is designed to forestall perjury, by reminding those who are called to testify that the oath that they take is not an idle formality. Second, by providing for punishment for those who violate the oath, it seeks to deter similar conduct by others. When a witness does what Snyder did, he makes himself liable to that punishment. This is a "coercion" established by law. When Snyder agreed to tell the truth, in the hope of escaping that punishment, he was not acting under the kind of coercion that the law condemns.

The record supports the trial court's implied finding that the "promise" that Snyder relies upon was not made. Moreover, if it had been made, the reason that it was not kept is that Snyder did not carry out his own promise to testify. He knew the terms of the bargain, if bargain there was. He cannot renege and then seek the protection of the courts so that he may go scot-free in spite of his own duplicity. It does not surprise us that Snyder is unable to cite authority in support of his remarkable proposition.

## MOTION TO DISMISS THE INDICTMENT

■■ Snyder argues that the indictment should have been dismissed as to the contempt charge because his refusal to testify was on the advice of counsel. The indictment charged an offense. A motion to dismiss is not the proper way to raise a defense. Las Vegas Merchant Plumbers' Ass'n v. United States, 9 Cir., 1954, 210 F.2d 732, 741. Snyder took the stand "for the purpose of this motion only." He testified that he had refused to answer in the case mentioned in count one on the advice of his counsel. He also gave other, contradictory, testimony. The court denied the motion without comment. The evidence supports, though it does not require, a finding that Snyder did not rely on advice of counsel. On that ground alone, the denial of the motion must be affirmed.

■ During the trial, not one word of evidence was offered in support of the advice of counsel defense. Technically, then, the question is not before us. However, because the matter was handled rather informally, there being no jury present, we consider the question on the assumption, first, that the question is before us, and second, that Snyder did rely upon his counsel's advice. Nevertheless, such advice is no defense. Eustace v. Lynch, 9 Cir., 1935, 80 F.2d 652, 656. See also Taylor v. United States, 6 Cir., 1955, 221 F.2d 809, 810; In re Door, 1952, 90 U.S.App.D.C. 190, 195 F.2d 766, 770 n. 6; United States v. Goldfarb, 2 Cir., 1948, 167 F.2d 735. Acceptance of the rule requested by Snyder would in effect do away with the judicial grant of immunity because a witness given immunity could still avoid testifying if his attorney advised him to remain silent. We are not persuaded by the dictum in In re Eskay, 3 Cir., 1943, 122 F.2d 819, 822 n. 17, on which Snyder relies. The two cases there cited, Matthews v.

Spangenberg, C.C.S.D.N.Y., 1883, 15 F. 813, and Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co., 6 Cir., 1915, 230 F. 120, each involved good faith reliance upon counsel's advice that what the defendant did was not a violation of the court's order. Here, the advice, if given at all, was to disobey the court's order. We have held that in such a case the attorney is also in contempt. Leber v. United States, 9 Cir., 1909, 170 F. 881, 889–890; Anderson v. Comptois, 9 Cir., 1901, 109 F. 971; *cf.* In re Noyes, 9 Cir., 1902, 121 F. 209, 225 ff.

The second part of Snyder's motion to dismiss the indictment is related to the perjury counts, and is based on what Snyder calls the "basic inequity" of the situation. In support of his argument Snyder cites Saldana v. United States, 1961, 365 U.S. 646, 81 S.Ct. 783, 5 L.Ed. 2d 855. In that case a defendant who had more or less been promised a five-year sentence by one judge was given a twenty-year sentence by another. That is a far cry from this case. Here, the only "inequity" was in Snyder's own behavior. If he found himself between the Scylla of his obligations to the law and the Charybdis of his former associates he has no one to blame but himself.

## VIOLATIONS OF THE 5th and 8th AMENDMENTS

Snyder argues that although he was apparently prosecuted for contempt and perjury, the government was actually prosecuting him for his failure to testify, and that therefore the judgment imposes double punishment for the same act, in violation of the Fifth Amendment, and imposes too long a sentence, in violation of the cruel and unusual punishment clause of the Eighth Amendment. To state the argument is to refute it. Snyder's punishment for contempt rests upon his refusal to testify; that punishment is six months imprisonment. His punishment for perjury, based upon eight separate charges, is four years imprisonment on each, concurrent—an average of six months on each charge.

## MOTION TO STRIKE

Snyder has moved to strike the government's brief on the ground that it states facts outside the record. In one instance it does. The statement occupies three lines in a ten page brief; it refers to testimony by Snyder and his counsel in another case and was obviously provoked by extravagant and unsupported statements in Snyder's brief. We do not commend the government's foray into outer darkness, but we do not think that it warrants striking the brief.

Judgment affirmed; motion to strike denied.