**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Maurice W. STEVENSON, Defendant-**
**Appellant.**

**No. 18440.**

United States Court of Appeals,
Seventh Circuit.

June 17, 1971.

Rehearing Denied July 8, 1971.

Certiorari Denied Oct. 12, 1971.

See 92 S.Ct. 108.

Howard O. Edmonds, Evanston, Ill., Howard T. Savage, Chicago, Ill., for appellant.

William J. Bauer, U. S. Atty., James C. Murray, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel, for appellee.

Before FAIRCHILD and PELL, Circuit Judges, and GORDON, District Judge.[1]

PELL, Circuit Judge.

Defendant Maurice W. Stevenson was charged in a three count indictment with having unlawfully sold, received and otherwise dealt with narcotic drugs on November 30, 1966 and August 18, 1967 in violation of 26 U.S.C. § 4705(a) and 21 U.S.C. § 174. Following conviction this court reversed the judgments and remanded the cause for a new trial. United States v. Stevenson, 409 F.2d 354 (7th Cir. 1969).

Stevenson was retried on the first two counts of the indictment relating to occurrences on November 30, 1966, and was again found guilty following a jury trial. He was sentenced to five years imprisonment on each count, the sentences to run concurrently. Stevenson brings the instant appeal from those judgments of conviction and sentence.

The relevant facts are these. On November 30, 1966, Federal Bureau of Narcotics Agent Kenneth C. Cloud and an informer, Elkins, drove to 46th Street and St. Lawrence Avenue in Chi-

1. Judge Gordon is sitting by designation from the Eastern District of Wisconsin.

cago, followed by agents Bottorff and Verdovec in a second car. There the informer introduced Cloud to a man later identified in testimony as Stevenson. After some conversation, Cloud paid the man $115 for a spoon of heroin which was to be delivered within 10 minutes at 40th and State Streets.

Cloud and the informer proceeded to that location. At about 6:00 p. m., the man to whom the money had been paid arrived in a red Buick convertible. He walked to Cloud's car, leaned down and dropped three tin foil packages into the informer's hands. Cloud immediately took the packages. The man walked away.

Stevenson contends that the evidence was not sufficient to prove him guilty beyond a reasonable doubt. He first urges that there is "a possibility of a break in the chain of custody" of the narcotics introduced in evidence against him. Stevenson concedes that on this question the trial judge is to determine the adequacy of the evidence of custody to warrant reception of physical evidence and that this decision can be overturned only for clear abuse of discretion. *See* Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960). He also concedes that Government witnesses testified to the whereabouts of the evidence during the entire period from its acquisition until trial.

■ He contends, however, that due to the length of time between the alleged offense and his second trial, the number of people who had custody of the evidence, the fact that at one point the evidence was mailed to and from Washington, D. C., and the fact that Government witnesses refreshed their recollection from official records, it is "a bit more than conceivable that tampering with the evidence has occurred." Such utter speculation cannot be credited on appeal in the face of Government evidence showing a continuous chain of custody. As Stevenson further concedes, the mere fact that it is conceivable that tampering has occurred is not sufficient to require the exclusion of the evidence.

West v. United States, 359 F.2d 50, 55 (8th Cir. 1966), cert. denied 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94. The trial court did not abuse its discretion in admitting the narcotics in evidence.

■ Defendant also points to certain minor discrepancies between the testimony of the Government agents and the informer. The discrepancies involve the exact location, within a block or two, of the meetings with Stevenson; the color of the top of Stevenson's car; whether the informer had any money with him and who walked to whom when the narcotics were passed.

The record contains uncontradicted testimony of the agents and the informer that Cloud and the informer did meet Stevenson twice on November 30, 1966, that on the first meeting money was transferred to him and that on the second meeting he transferred narcotics to Cloud and the informer. In light of this testimony, the assembled minor discrepancies cannot negate the fact that the jury was presented with sufficient evidence to find Stevenson guilty beyond a reasonable doubt.

Stevenson further challenges the ability of the Government agents to identify him because of the darkness at the time of the meetings. The agents testified that it was just getting dark. We, of course, must take the evidence in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and given the face-to-face nature of the meetings, we cannot say that the jury could not find that Stevenson had been adequately identified as the person who sold the narcotics to agent Cloud.

■ Stevenson next urges that the trial court abused its discretion in permitting the Government to reopen its case-in-chief and that this had the effect of denying him due process by suppressing favorable evidence.

The defense had subpoenaed the informer Elkins. Based on a prior conversation with Elkins, defense counsel believed that Elkins would testify that

he was a paid Government informer in November 1966; that he knew nothing of the transaction with Stevenson on November 30, 1966; that he was never with Stevenson or agent Cloud on that day and that he did not receive drugs or any other packages from Stevenson.

When the defense called Elkins, he invoked his Fifth Amendment privilege against self-incrimination on the advice of his own attorney. A lengthy proceeding out of the presence of the jury followed. The trial judge indicated his belief that there was no real basis for the assertion of the privilege and his displeasure at the Government's reluctance to grant Elkins immunity. Defense counsel indicated his desire that Elkins be called as a witness of the court.

After further discussion, the Government agreed to grant Elkins immunity if it was permitted to reopen its case for the purpose of making him its own witness. Defense counsel objected to this procedure for fear that the Government's sudden change of position in agreeing to grant immunity and call Elkins as its own witness indicated the possibility of tampering. The court questioned Elkins as to any contacts with the Government since the commencement of the case and established that there had been none. However, it also appeared that after Elkins had talked to defense counsel, he had seen a statement he had previously given to the Government.

Elkins was asked whether his testimony would be different than what he had told defense counsel it would be in their earlier meeting. He replied that it would be. Defense counsel continued to object to Elkins being called as a Government witness. The trial court asked if the defense would call him as its witness and defense counsel replied that he would not and again requested that Elkins be called as a court witness. The court pointed out that so long as the Government was willing to call him, there was no need to make Elkins a court witness. Defense counsel agreed that that was true.

The court then ruled that it would permit the Government to reopen its case for the purpose of calling Elkins and would permit the defense a wide scope of cross-examination. Elkins' testimony covered the details of the November 30, 1966 transaction and corroborated the testimony of the Government agents in all material respects. On cross-examination, defense counsel did not raise the subject of Elkins prior inconsistent statement to defense counsel.

Stevenson concedes that the trial judge has broad discretion with respect to the order of proof and permitting a party to reopen its case. *See* Rhyne v. United States, 407 F.2d 657, 661 (7th Cir. 1969). However, he contends that that discretion was abused here. He argues that by permitting the Government to reopen to put Elkins on the stand, rather than forcing Elkins to testify when called as a defense witness, the court aided the prosecutor in suppressing evidence favorable to the defense, for "if he had forced Elkins to testify, this witness would have given testimony highly favorable to defendant or would have been impeached under the doctrine of prior inconsistent statements." Stevenson urges that "cross-examination, although it may have broad latitude, must pertain to what is developed on direct examination."

We see no merit in this argument. It is clear that Elkins' testimony would not have been "highly favorable to defendant" since Elkins had informed the court and defense counsel that it would not be. As to the possibility of impeachment, we fail to understand why Elkins was any less impeachable by his prior inconsistent statement when testifying as a Government witness than he would have been had he testified as a defense witness. In fact, it is difficult to see how defense counsel could have hoped to impeach Elkins had he testified as a defense witness after informing defense counsel of what his testimony would be and thereby precluding any claim of surprise. *See* Bushaw v. United States, 353 F.2d 477, 481 (9th Cir.

1965), cert. denied 384 U.S. 921, 86 S.Ct. 1371, 16 L.Ed.2d 441 (1966). On the other hand, his right to impeach him as a Government witness seems plain. *See* United States v. Ruehrup, 333 F.2d 641, 645–646 (7th Cir. 1964), cert. denied 379 U.S. 903, 85 S.Ct. 194, 13 L.Ed.2d 177. Furthermore, having failed to make any attempt to impeach Elkins at trial, Stevenson is in no position to assert that he would not have been permitted to do so had he tried. In fact, the trial judge specifically stated that such impeachment would have been "perfectly proper."

Thus, it would appear that the ruling permitting the Government to re-open its case-in-chief was actually beneficial to Stevenson since it meant that he would not be bound by Elkins' testimony and could fully cross-examine and impeach him. This, of course, was just what defense counsel sought when he asked that Elkins be called as a court witness. Thus, we conclude that there has been no showing of prejudice and that the trial court did not abuse its discretion in permitting the Government to reopen its case for the purpose of making Elkins its own witness. Nor did this procedure result in the suppression of any evidence in violation of Stevenson's due process rights.

■ In this same connection, Stevenson contends that Elkins was somehow intimidated by the trial court and the prosecutor when he was warned that the grant of immunity did not extend to perjury. We find no such intimidation in the cautioning remarks of the court and prosecutor as revealed by the record before us. It is no more than that faced by every witness who testifies under oath. Every witness is confronted with the standing "threat" that he tell the truth or risk the possibility of a prosecution for perjury. *See* United States v. Snyder, 428 F.2d 520, 522 (9th Cir. 1970).

■ Stevenson further contends that the trial court committed reversible error in commenting upon the evidence, the weight of the evidence and the credibility of the witnesses. With one exception, these contentions do not merit extended discussion. Stevenson concedes that "upon reviewing the record, except for the final remark to the jury, it is quite obvious that the learned trial judge apparently conformed to the letter of neutrality." On the other hand, he contends, "it is equally obvious that his mode of presentation to the jury did not conform to the spirit of neutrality, for he expressed his opinion by innuendo."

Study of the transcript of the trial court's entire charge to the jury reveals no such "innuendo." The passages relied upon by Stevenson have simply been taken out of context. It is difficult to find the "innuendo" even when the statements are thus torn from their context. There certainly is none when they are read in context.

The one exception which merits specific mention is a statement made by the trial judge just as the jury was retiring to consider its verdict. A question arose as to which of the physical exhibits should go to jury room. In the course of discussing various exhibits with counsel, the trial judge said: "I am not going to send heroin to the jury room. I am sorry."

First, we think it obvious that this offhand comment, made after the judge had concluded his charge to the jury and as he was excusing it, cannot be taken as an instruction that the jury should, as a matter of law, make a finding of fact adverse to defendant on an essential element of the crime. *Cf.* United States v. England, 347 F.2d 425 (7th Cir. 1965). At most, and even here we stretch the usual understanding, it amounts to a comment upon the evidence. The right of the trial judge to comment fairly upon the evidence is, of course, firmly established in the federal courts. *See England, supra,* 347 F.2d at 433–434. It is only essential that, in the end, "the decision of issues of fact must be fairly left to the jury. * * *" United States v. Murdock, 290 U.S. 389,

394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933).

There can be no question that here the trial judge was scrupulously careful throughout his charge to emphasize to the jury that the decision was theirs, not his, and that his only thought of what the decision should be was that it should be what they decided. Thus, even if the challenged side comment can be viewed as a comment on the evidence, we find that the judge specifically, repeatedly and sufficiently advised the jury that it had the obligation to be "the sole judges of the facts with complete discretion as to the evidence."

Further, we think the aside was a fair comment upon the evidence if, indeed, the jury took it as a comment. The Government produced an expert who testified that the white powder offered in evidence contained heroin hydrochloride. The accuracy of his analysis was not challenged on cross-examination. No defense expert was offered to contradict the Government test results. Thus, as the evidence went to the jury, the fact that the exhibit contained heroin was all but conceded. The major thrust of the defense offered was not that there had been no sale of a narcotic drug but that the identification of Stevenson as the seller was erroneous. Under all of the circumstances of the instant case, this court's holding in United States v. Jonikas, 197 F.2d 675, 679 (7th Cir. 1952), cert. denied 344 U.S. 877, 73 S.Ct. 171, 97 L.Ed. 679, is applicable:

> "It is not even reversible error for the court in its instructions to assume the existence of facts, the existence of which is undisputed or proved beyond controversy." *But see England, supra*, 347 F.2d 427. *See also* United States v. Meltzer, 100 F.2d 739 (7th Cir. 1938).

■ Stevenson also urges that the district court erred in admitting certain testimony by Government witnesses. Agent Cloud on direct testified that he occasionally performed in an undercover capacity and used advance funds, obtained from the cashier at the narcotics bureau, to make controlled purchases. He testified that he had been involved in two or three hundred cases.

Stevenson's basic objection to this testimony is that it is irrelevant as going only to the general procedures and is highly prejudicial since it directed the jury's attention to the whole serious problem of narcotics control. Neither of these assertions is persuasive. The testimony was relevant since these procedures were allegedly followed by agent Cloud in this case and his prior experience in such cases would aid the jury in assessing the credibility of his testimony. Further, Stevenson's allegations of prejudice are pure speculation which we find unpersuasive. Certainly, a jury sitting in a narcotics case could not be unaware of the general narcotics problem and we fail to see how such a jury would be "inflamed" by the description of the routine procedures of the narcotics bureau.

Stevenson also objects to the testimony of two other agents on redirect. In each instance, he contends the testimony went beyond the scope of cross-examination. In one case, the objection is that the redirect was more general than the cross; in the other, that the redirect was more specific than the cross. In our opinion, the defense's cross opened the subjects addressed on redirect and the redirect was within the scope of the cross. Stevenson attempts to draw unrealistically fine lines.

We find no error in the complained of evidentiary rulings of the trial court.

■ Finally, Stevenson complains of certain questions asked by the prosecutor in cross-examining him. The questions related to his employment, his car and his various places of residence. Timely objections were made to such questions and were sustained in most instances. Stevenson, however, contends that he was prejudiced because the questions could have induced the jury to believe that although he was unemployed, he owned an expensive car and that he had had a number of different residences. He further asserts that the

prejudice was compounded by the trial court's lengthy admonitions to the jury in sustaining the objections. He stresses that this questioning was greatly protracted, that its effects could not therefore be cured by the sustaining of objections to the improper questioning and that the trial court should have required the prosecutor to abandon the whole line of questioning.

First, we note that the allegedly improper line of questioning was not nearly so protracted as Stevenson asserts. He contends that it occupied 47 pages of the record. However, Stevenson's entire testimony occupied only 31 pages and the cross-examination covers only 22 pages. The vast majority of these pages is taken up with unarguably proper cross-examination.

Next, we note that as to any questions relating to the type of car owned by Stevenson, the first thing that his own attorney had established on direct was that he owned the Buick Electra convertible about which the prosecutor later questioned him on cross. Thus, no allegedly improper innuendo from the prosecutor's question was needed to get that point across to the jury.

As to Stevenson's employment and residence, the trial court promptly squelched improper questions directed to those subjects. In each instance, the trial judge specifically instructed the jury, once at defense counsel's request, as to the impropriety of the question. Later in his charge to the jury, the trial judge cautioned the jury against giving consideration to questions to which objections had been made and sustained.

From our examination of the record, we can find no prejudice to Stevenson's cause by the asking of a minimal number of arguably improper questions, objections to which were promptly sustained with careful and thorough admonitions to the jury to disregard the questions. *See* United States v. Lacob, 416 F.2d 756, 763 (7th Cir. 1969), cert. denied 396 U.S. 1059, 90 S.Ct. 755, 24 L.Ed.2d 754 (1970); and United States

v. Spatuzza, 331 F.2d 214 (7th Cir. 1964), cert. denied 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38.

Having found Stevenson's various allegations of error to be without merit, the judgment of conviction and sentence is affirmed.

Affirmed.