**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jaye WILSON, Defendant-Appellant.**

No. 79-1528.

United States Court of Appeals, Ninth Circuit.

March 6, 1980.

Dan Rodger Dubitzky, Seattle, Wash., for defendant-appellant.

Christine McKenna, Seattle, Wash., for plaintiff-appellee.

Before DUNIWAY and WALLACE, Circuit Judges, and JAMESON,\* District Judge.

JAMESON, District Judge:

Jaye Wilson was convicted on two counts of acquiring controlled substances by means of forged order forms in violation of 21 U.S.C. § 843(a)(3).[1] Wilson had been subpoenaed to appear before a grand jury. In lieu of appearing before the grand jury she chose to be interviewed by an Assistant United States Attorney and during the interview confessed. She was subsequently indicted and moved to suppress her statements in the interview and to dismiss the indictment. Her motion was denied and the case proceeded to trial before the court without a jury. Upon conviction she was given a suspended sentence and placed on probation for three years. We affirm.

### Factual Background

In February, 1979, Dr. Rex B. Palmer, a physician and surgeon who employed Wil-

---

\* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. 21 U.S.C. § 843(a)(3) prohibits acquiring or obtaining possession "of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge".

son as a registered nurse, informed Drug Enforcement Administration (DEA) Agent Flett that orders for narcotics bearing Palmer's forged signature had been submitted to a local pharmacy and that a section of his order form book was missing. Flett in turn gave this information to Assistant United States Attorney Francis Diskin.

On March 1, 1979, Diskin had a subpoena prepared requiring Wilson to appear before the grand jury at 11:00 A.M. on March 13, 1979. Diskin did not give the subpoena to the United States Marshal for routine service, but instead gave it to Agent Flett with instructions to delay service until directed by Diskin.

On March 12, 1979, Diskin directed Agent Flett to serve the subpoena the following morning at Dr. Palmer's officer. Flett and a county officer arrived at Palmer's office about 9:00 A.M., March 13. They served Wilson at about 10:30 A.M. when she arrived at work. She became emotionally upset when served with the subpoena. She asked permission to speak to Dr. Palmer.

After speaking with Dr. Palmer, Wilson asked Agent Flett how she could avoid an appearance before the grand jury. The agent replied that he could not make that decision and that she would have to speak to the United States Attorney in charge of the case. At Wilson's request the agents escorted her to the courthouse, a few blocks from Dr. Palmer's office. En route Flett explained that she did not have to speak to the agents and that she had a right to counsel except when appearing before the grand jury. Wilson indicated that she would like to talk to Diskin.

The agents escorted Wilson to Diskin's office. Diskin told her that the subpoena did not require her appearance in his office, but only required her to appear before the grand jury. Wilson received and waived her *Miranda* rights. During the subsequent hour long interview, she admitted that she had forged Palmer's signature on the narcotics orders, that she was addicted to drugs, and that she had dispensed drugs to her boy friend and friends.

## Suppression Hearing

Following her indictment on April 10, 1979, Wilson moved to suppress the statements made in the March 13 interview on the grounds that (1) the service of the subpoena on the same morning that she was to appear before the grand jury was an abuse of discretion requiring exercise of the court's supervisory control; (2) the subpoena improperly commanded an appearance before the United States Attorney, not the grand jury; and (3) her statements were not made voluntarily, but stemmed from fear.

Diskin, testifying for the Government at the suppression hearing, explained that he had delayed service of the subpoena until March 13 because he expected Wilson would again attempt to forge Dr. Palmer's signature and thus would provide him with additional evidence. He explained further that subpoenas routinely direct grand jury witnesses to report to the floor of the federal courthouse where the United States Attorney's office is located to allow the witnesses to obtain vouchers for witness fees, and that he directed Agent Flett to serve the subpoena at Wilson's place of business rather than her home only because Dr. Palmer's office was located close to the courthouse. Diskin admitted there was no risk that Wilson would flee or destroy evidence.

The district court found that the primary reason for not serving the subpoena earlier was to acquire additional evidence and that this was reasonable under the circumstances of the case; that the direction in the subpoena to report at the United States Attorney's office was for accounting purposes only; that Wilson fully understood that she was required only to appear before the grand jury, but instead chose voluntarily to appear before the Assistant United States Attorney; and that she was fully advised of her *Miranda* rights.

## Contentions on Appeal

Appellant contends that (1) where, as here, "there is no evidence that a witness

subpoenaed on a forthwith basis will either flee or destroy evidence, it is unreasonable per se to issue a forthwith subpoena"; and (2) this court "should, in its supervisory capacity, suppress the defendant's statement" made as a direct result thereof. She does not contend, however, that her confession was involuntary or given in violation of *Miranda* rights.[2]

### Issuance of Subpoena

Wilson contends that a "forthwith subpoena" is tantamount to an arrest and that "certain restrictions" must therefore be placed upon the United States Attorney's power to cause a subpoena of this nature to be issued. She cites the United States Attorney's Manual, Limitations on the Grand Jury Subpoenas, § 9–11, 230 which recommends:

All grand jury witnesses should be accorded reasonable advance notice of their appearance before the grand jury. "[F]orthwith" . . . subpoenas should be used only when swift action is important . . . Considerations, among others, which bear upon the desirability of using such subpoenas include . . . (1) the risk of flight; (2) the risk of destruction or fabrication of evidence; (3) the need for the orderly presentation of evidence; and (4) the degree of inconvenience to the witness.

Recognizing that these provisions do not carry the force of law, Wilson argues that "they are instructive as to what standard the court should apply in the application of its supervisory power."

■ Supervisory control of grand jury procedures is narrowly construed in this circuit. *In re Grand Jury Proceedings, Hergenroeder*, 555 F.2d 686 (9 Cir. 1977). As the court said in *United States v. Chanen*, 549 F.2d 1306, 1313 (9 Cir. 1977), *cert. de-*

nied, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977):

[G]iven the constitutionally-based independence of each of the three actors— court, prosecutor and grand jury—we believe a court may not exercise its "supervisory power" in a way which encroaches on the prerogatives of the other two unless there is a clear basis in fact and law for doing so. If the district courts were not required to meet such a standard, their "supervisory power" could readily prove subversive of the doctrine of separation of powers.

(footnotes omitted); *accord, United States v. Hall*, 559 F.2d 1160, 1164 (9 Cir. 1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1523, 55 L.Ed.2d 539 (1978). The legal basis for a court's assertion of its supervisory power "is the need to preserve the integrity of the judicial process and to avoid any fundamental unfairness". *Chanen, supra* at 1313; *accord United States v. Shelton*, 588 F.2d 1242, 1246 (9 Cir. 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979). As in *Chanen*, "it is far from clear" that the manner in which the grand jury subpoena was served "implicates any of those interests".

■ First, there is no clear basis in law for exercising "supervisory power". Although we recognize the propriety of the guidelines in the United States Attorney's Manual, *supra*, these guidelines, as the district court and both parties recognize, do not have the force of law.[3] A court is not required to enforce an agency regulation unless compliance with the regulation is mandated by the Constitution or federal law. *United States v. Caceres*, 440 U.S. 741, 749–751, 99 S.Ct. 1465, 1470–1471, 59 L.Ed.2d 733 (1979). As this court held in *United States v. Welch*, 572 F.2d 1359, 1360 (9 Cir.), *cert. denied*, 439 U.S. 842, 99 S.Ct.

---

**2.** While at Diskin's office, Wilson asked to make a telephone call. Later, when testifying during the suppression hearing, she stated that she was "kind of thinking about calling" her stepfather, an attorney. On cross-examination, however, she admitted that she did not say that she wanted to call a lawyer. See *United States v. Botero*, 589 F.2d 430, 432 (9 Cir. 1978).

**3.** As the district court noted, the Manual states that grand jury witnesses *should* be accorded reasonable advance notice—that this provision is not mandatory and "did not carry the weight or effect of law".

133, 58 L.Ed.2d 140 (1978), the court "will not interfere with the Attorney General's prosecutorial discretion unless it is abused to such an extent as to be arbitrary and capricious and violative of due process", and unless "a breach of the Attorney General's in-house rules rises to this level", this court has no authority to enforce them. The *per se* rule urged by appellant would be inconsistent with the narrow scope of our supervisory power over grand jury proceedings. Whether judicial integrity will be jeopardized or fundamental fairness threatened must be determined on a case by case basis.

Second, there is no clear basis in fact for exercising supervisory power. Although the court in *United States v. DiGilio*, 538 F.2d 972 (3 Cir.), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1976), held that the use of the forthwith subpoena was an abuse of process under somewhat similar circumstances, the case is factually distinguishable. In *DiGilio*, FBI agents approached the defendant at his place of business at 8:00 A.M. They indicated that they wanted to question him about the theft of certain FBI records and gave him a *Miranda* warning. When the interview proved fruitless, the agents served a forthwith subpoena issued in blank directing the defendant to appear before the grand jury that afternoon. The agents also directed the defendant to go to the federal courthouse at once. The defendant accompanied the agents to the courthouse and during the next seven and one-half hours he made several incriminating statements to them and the United States Attorney at their offices. The court found there was ample evidence that the subpoena was misused "as a ploy for facilitation of office interrogation".[4]

Unlike *DiGilio*, the record here indicates that the primary reason for using a forthwith subpoena was to collect additional evidence—a legitimate prerogative of the Government. The Assistant United States Attorney explained that he delayed service because he believed Wilson would again forge Dr. Palmer's signature on an order form between March 1 and March 13. The district court found this testimony persuasive, and this finding must stand under the clearly erroneous standard of review applicable to findings made at a suppression hearing. See, *e. g.*, *United States v. Botero*, 589 F.2d 430, 433 (9 Cir. 1978) *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979).

Moreover, the record does not support a conclusion that the subpoena in this case was used as a ploy to facilitate office interrogation. The district court accepted the United States Attorney's explanation that grand jury witnesses were routinely directed to the floor of the federal courthouse, where the United States Attorney's office is located, for administrative purposes only, and there was no evidence presented to the contrary. Furthermore, there was no evidence that the agents and the Assistant United States Attorney attempted to pressure Wilson into talking to them. To the contrary, the agents told Wilson that the subpoena only required her to appear before the grand jury and that she had a right to counsel outside the grand jury room. The United States Attorney repeated this information when Wilson decided that she would like to see him rather than appear before the grand jury. Wilson's confession was voluntarily made after she was advised of her *Miranda* rights and waived them.

▮ Under these circumstances, there was no abuse of process. The district court did not err in denying appellant's motion to suppress her confession and to dismiss the indictment.[5] We affirm the judgment of conviction.

---

4. The court in *DiGilio* also found the misuse of a subpoena served upon another defendant. The court concluded, however, that it could not enforce a suppression remedy, since it was determined that the confessions were voluntary, holding that under 18 U.S.C. § 3501 all voluntary confessions are admissible.

5. We do not believe, however, that it was a good practice to wait until two hours prior to the grand jury session to attempt to serve a subpoena—especially where the witness is the target of the investigation. On oral argument the Government admitted that little would have

been jeopardized by serving Wilson twenty-four hours prior to her appearance. This factor standing alone, however, does not justify court intrusion into the grand jury process.