UNIVERSAL CITY STUDIOS, INC., et al., Plaintiffs-Appellees,

v.

N.Y. BROADWAY INTERNATIONAL CORPORATION, et al., Defendants,

Chong In Lee and Bendar Wu, Contemnors-Appellants.

No. 961, Docket 82–7900.

United States Court of Appeals, Second Circuit.

Argued March 17, 1983.

Decided April 20, 1983.

Alan Jay Harris, New York City, for con-temnors-appellants.

Peter Sudler, New York City (Sudler & Barth, New York City, on brief), for con-temnor-appellant Wu.

Evan L. Gordon, New York City (Wofsey, Certilman, Haft, Lebow & Balin, New York City, on brief), for plaintiffs-appellees.

Before MANSFIELD, MESKILL and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This is an appeal from an October 28, 1982, judgment of the District Court for the Southern District of New York (John E. Sprizzo, Judge) holding appellants Chong In Lee and Bendar Wu in criminal contempt and sentencing them to unconditional terms of thirty days' imprisonment. Because the proceedings were initiated and conducted as civil contempt proceedings, the criminal contempt punishments were improperly imposed and must be set aside.

Plaintiffs-appellees Universal City Studios, Inc. and its merchandising licensee, Merchandising Corporation of America, Inc., hold rights in the well-known movie "E.T.—The Extra-Terrestrial." While E.T. has been delighting movie audiences throughout the country, plaintiffs have been enforcing their rights to prohibit the sale of counterfeit and unlicensed E.T. merchandise. Toward that end they brought suit in the District Court against defendants N.Y. Broadway International Corp. ("N.Y.

Broadway") and Greaton International, Inc. ("Greaton") and two other companies for unauthorized sale of jewelry and various novelty items bearing the name and likeness of E.T. Appellant Lee is president of N.Y. Broadway, and appellant Wu is president of Greaton. A preliminary injunction barring unauthorized sales was obtained by default on August 25, 1982.

After the injunction was served on Lee and Wu, acting for their corporations, an investigator for the plaintiffs observed E.T. dolls and other merchandise still offered for sale at N.Y. Broadway and Greaton and purchased some of these items. Based on this information, plaintiffs presented to Judge Sprizzo a show cause order to initiate contempt proceedings. The order, signed on October 15, 1982, called upon the defendants N.Y. Broadway and Greaton and their officers to show cause on October 21 "why an order should not be made herein pursuant to Rule 65(b) of the Federal Rules of Civil Procedure holding the defendants in civil contempt" of the preliminary injunction.

At the hearing plaintiffs presented testimony that purchases of E.T. merchandise had been made at both stores after service of the preliminary injunction. Plaintiffs entered several items of such merchandise in evidence. Wu testified that after receipt of the preliminary injunction he had placed E.T. merchandise in cartons at the rear of the store. Lee testified that, not having seen the movie "E.T.," he could not tell which merchandise he was not to sell. He also testified that a company from which he had obtained E.T. posters had told him something about a license and advised him he could continue selling the posters.

At the conclusion of the evidence counsel for plaintiffs began to discuss with the Court the need for an accounting so that appropriate compensation could be determined. Judge Sprizzo replied that counsel was "lumping two issues," and said, "[T]he problem is that you are lumping the contempt issue, which is a criminal contempt." Plaintiffs' counsel replied, "I was taking this as a civil contempt rather than a criminal contempt." Judge Sprizzo then stated, "It is not a civil contempt.... I thought you were asking me to adjudge them guilty of a contempt for a past violation." When plaintiffs' counsel answered, "Absolutely, sir," Judge Sprizzo stated, "That is a criminal contempt." At that point plaintiffs' counsel asked for an adjudication of criminal contempt and the imposition of a "fine or other punishment." Judge Sprizzo then made findings that both Wu and Lee had willfully violated the injunction and imposed on each an unconditional thirty-day sentence. At the conclusion of the hearing, Judge Sprizzo said he was retaining jurisdiction "over the balance of the case with respect to any civil remedies that may be appropriate."

▇▇▇ Though the use of judicial power to secure future compliance with a court order involves civil contempt remedies, *Shillitani v. United States,* 384 U.S. 364, 368–70, 86 S.Ct. 1531, 1534–35, 16 L.Ed.2d 622 (1966), the use of such power in the aftermath of past violations can take the form of either civil contempt remedies or criminal contempt punishments, or both, *Backo v. Local 281, United Brotherhood of Carpenters & Joiners of America,* 438 F.2d 176 (2d Cir.1970), *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 858 (1971). When an injunction has been violated, civil contempt remedies are available to provide compensation or other remedial relief for the party for whose benefit the injunction was entered, and criminal contempt penalties may be imposed, where appropriate, to punish the violation and vindicate the court's authority.[1]

▇▇▇ Rule 42(b) of the Federal Rules of Criminal Procedure sets out the procedure

---

1. The contemnors mistakenly rely on *Shillitani v. United States, supra,* to assert that criminal contempt sanctions may not be imposed until there has been a determination that civil contempt remedies are ineffective. That rule applies when a court is endeavoring to secure future compliance with a court order, *id.* 384 U.S. at 371 n. 9, 86 S.Ct. at 1536 n. 9, not when a court is taking cognizance of past violations.

for initiating criminal contempt proceedings. Codifying the practice outlined in *McCann v. New York Stock Exchange*, 80 F.2d 211 (2d Cir.1935), *cert. denied*, 299 U.S. 603, 57 S.Ct. 233, 81 L.Ed. 444 (1936), Rule 42(b) requires, among other things, a notice that "shall state the essential facts constituting the criminal contempt charged and describe it as such." *See* Fed.R.Crim.P. 42(b) advisory committee note, comment 2. The Rule further provides that if the notice is not given to the defendant in open court by the trial judge, it shall be given by the United States Attorney or "an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest." The requirement of an explicit labeling of a criminal contempt proceeding "as such" is designed to avoid confusion as to whether a person is being proceeded against civilly or criminally, *Musidor, B.V. v. Great American Screen*, 658 F.2d 60, 64 (2d Cir.1981), *cert. denied*, 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982). Correct understanding of the nature of the proceedings is vital since a person facing criminal contempt is exposed to significant penalties and is entitled to procedural rights not available in civil contempt proceedings.

■ Though Rule 42(b) in terms refers to the United States Attorney or an attorney appointed by the court solely for purposes of giving notice to the accused contemnor, the plain implication of the Rule is that the proceedings are to be prosecuted either by the federal prosecutor or a private attorney specially designated to do so. When evidence in a contempt proceeding has been presented, as was the case here, by an attorney for a party that secured an injunction and no designation has been made that he was to prosecute a criminal contempt on the court's behalf, we have held that the proceeding was "for civil contempt only." *National Popsicle Corp. v. Kroll,* 104 F.2d 259, 260 (2d Cir.1939).

Strict compliance with Rule 42(b) has on occasion been excused where it was clear that the contemnor understood the criminal nature of the contempt proceeding, *e.g., United States v. United Mine Workers of America,* 330 U.S. 258, 297–98, 67 S.Ct. 677, 697–98, 91 L.Ed. 884 (1947) (defendants' motion to dismiss referred to proceedings as criminal); *Stewart v. Dunn,* 363 F.2d 591, 599–600 (5th Cir.1966) (judge announced at outset that proceedings were criminal). No such claim can be made here. The show cause order labeled the proceedings "civil," and nothing was said to indicate the possibility of criminal sanctions until after the close of the evidence. Indeed, plaintiffs' counsel was as surprised as the contemnors to learn that criminal penalties were about to be imposed.

■ Appellees acknowledge the procedural irregularity of the criminal contempt adjudication, but seek affirmance of the jail sentences on the ground that the contemnors suffered no prejudice. We conclude that the absence of proper notice of the criminal nature of the proceedings fatally flaws the criminal contempt penalties, without any need to ascertain what steps the contemnors would in fact have taken had the proceedings been properly initiated. It suffices to note that they might have secured their own attorneys instead of being jointly represented and might have called witnesses from their stores to try to negate any criminal intent on their part.

The judgment of criminal contempt is reversed, and the cause remanded for determination of appropriate civil contempt remedies and, if it is thought warranted, the initiation of a criminal contempt proceeding. The record already made may serve as a valid basis for a finding of liability for civil contempt remedies against the corporate defendants N.Y. Broadway and Greaton;[2] however, criminal contempt proceedings, if initiated against the corporations or

---

**2.** Since the point has not been raised on this appeal, we express no view as to whether Lee and Wu, as officers of the corporation bound by the injunction of which they had notice, Fed.R.Civ.P. 65(d), can be held in civil contempt in a proceeding instituted by a show cause order directing the defendant corporations and their officers to show cause why the *defendants* (the corporations themselves) should not be held in civil contempt.

their officers, would require a new hearing conducted in conformity with Rule 42(b).

Reversed and remanded.