UNITED STATES of America,
Plaintiff-Appellee,

v.

Clarence S. ARMSTRONG, William John Williams, and Vincent Sammarco, Defendants-Appellants.

Nos. 84–1255 to 84–1257.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1985.

Decided Jan. 24, 1986.

L. Eric Johnson, Geoffrey Anderson, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Richard A. Wright, Wright, Shinehouse, & Stewart, Las Vegas, Nev., for defendants-appellants.

Before POOLE and REINHARDT, Circuit Judges, and KELLER,* District Judge.

POOLE, Circuit Judge:

In October 1981, appellants were subpoenaed to appear before a special federal grand jury investigating possible skimming or diversion of funds from casino properties owned by Trans-Sterling, Inc., where they were supervisors. The scheduled appearances were postponed to permit resolution by the district court of appellants' motions for disclosure of electronic surveil-

---

* The Honorable William D. Keller, United States District Judge for the Central District of Califor-nia, sitting by designation.

lance pursuant to *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). Judge Harry Claiborne denied those motions in April 1982, and subsequently signed immunity and compulsion orders for all three appellants pursuant to 18 U.S.C. § 6001.

Shortly before appellants' first appearances before the grand jury on January 4, 1983, they filed a second set of *Gelbard* motions which were substantially the same as those denied in April 1982. At the grand jury hearing, appellants refused to answer substantive questions based on claims of illegal electronic surveillance and self-incrimination although they were made aware of the immunity and compulsion orders issued by Judge Claiborne.

In March 1983, Judge Claiborne denied the second *Gelbard* motions. Appellants then appeared for a second time before the grand jury and again refused to answer substantive questions. On April 21, 1983, Judge Claiborne, on the government's motion, issued an order to show cause why appellants should not be held in civil contempt.

In response, appellants filed requests for untimely reconsideration of the denial of the *Gelbard* motions, for voire dire or dismissal of the grand jury based on juror bias, and for prosecutorial misconduct sanctions against the government's attorney. After a hearing, Judge Claiborne entered an order denying appellants' motions but recusing the one grand juror who was accused of bias. Judge Claiborne did not rule on the government's motion to hold appellants in civil contempt, but instead ordered appellants a third time to appear and testify before the grand jury in September 1983.

At that appearance, appellants were read Judge Claiborne's order directing them to testify. They were also reread their compulsion orders, reminded of the two *Gelbard* denials, and warned that a refusal to testify could result in criminal and/or civil contempt sanctions. Appellants again refused to respond. On January 10, 1984, the federal grand jury returned three sepa-rate one-count indictments charging each appellant with criminal contempt for willfully refusing to testify before the grand jury in violation of 18 U.S.C. § 401(3) and Fed.R.Crim.P. 42(b). Identical motions to dismiss the indictment were filed on behalf of each appellant due to the government's failure to consider the feasibility of civil contempt claimed to be required by *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), and on account of prosecutorial vindictiveness.

On June 13, 1984, Judge Roger Foley adopted the magistrate's recommendations that appellants' motions to dismiss be denied. Appellants were thereafter tried and found guilty of criminal contempt on August 31, 1984. Each was fined $500. Timely notices of appeal were filed on September 6, 1984.

## I.

■ Appellants first argue that their convictions must be reversed because the trial court failed to consider civil contempt sanctions before the grand jury returned indictments for criminal contempt. Because this issue involves a question of law, our standard of review is *de novo*. *See Matter of McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

Appellants base their claim on language contained in *Shillitani*, 384 U.S. 364, 86 S.Ct. 1531, where, as here, the petitioners refused to testify before the grand jury under a grant of immunity and were found guilty of contempt pursuant to Fed.R. Crim.P. 42(b). The petitioners argued that reversal of their convictions was warranted because they had been entitled to, and did not receive, indictments and jury trials. 384 U.S. at 365, 86 S.Ct. at 1533. The Court first found that the contempt proceedings had been civil in nature because appellants' release from custody had been conditioned upon the contemnors' willingness to testify. Thus, indictments and jury trials had not been constitutionally required. *Id.* The Court then ruled that contumacious witnesses cannot be confined after the grand jury has been discharged

when the contempt orders are coercive in nature, since the witnesses would have no opportunity to purge themselves of contempt. It was in the context of explaining that this restriction on confinement is in accordance with the "least possible power doctrine," that the *Shillitani* Court enunciated the rule which appellants urge is applicable here.

The "least possible power doctrine" requires that courts exercise the "least possible power adequate to the end proposed," *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821). The Court in *Shillitani* relied upon this doctrine to create a procedural rule restricting the exercise of judicial contempt power. That rule appears in footnote nine of the opinion, and states:

> [The "least possible power doctrine"] ... requires that the trial judge first consider the feasibility of coercing testimony through the imposition of civil contempt. The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate.

384 U.S. at 371 n. 9, 86 S.Ct. at 1536.

Appellants claim that this dictum in *Shillitani* was intended to serve as a rule to be followed in every case in which criminal contempt sanctions are imposed. Thus, they urge that when a witness refuses to testify before a grand jury under a grant of immunity and pursuant to a lawful court order, the court must first consider holding the witness in civil contempt before a grand jury may return an indictment for criminal contempt. We disagree. Appellants' interpretation fails to consider significant factual differences between the situation in *Shillitani* and the one before us. In *Shillitani*, the court, rather than the grand jury, initiated the contempt charges. Moreover, the charges were brought for the purpose of coercing compliance with the court's order to testify, and not to punish the witnesses for their contumacious conduct.

Appellants' argument also ignores the fact that the same conduct may result in both civil and criminal contempt. *United States v. United Mine Workers of America*, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *United States v. Powers*, 629 F.2d 619, 627 (9th Cir.1980). The distinction between the two forms of contempt lies in the intended effect of the punishment imposed. *United States v. Asay*, 614 F.2d 655, 659 (9th Cir.1980). The purpose of civil contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive. *United States v. Rylander*, 714 F.2d 996, 1001 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984); *Powers*, 629 F.2d at 624. Criminal contempt is intended to vindicate the court's authority in the face of contumacious and disrespectful acts. *See Asay*, 614 F.2d at 659. When a grand jury witness refuses to testify, civil contempt sanctions can be imposed to coerce compliance with the court's order, and penalties for criminal contempt can be assessed to punish the witness' disobedient conduct.

Additionally, appellants' interpretation of *Shillitani* fails to recognize the historical relationship between the grand jury and the courts, and the contempt powers of each. The power of a court to punish a defendant for refusing to comply with its direct order cannot be disputed. *See Rylander*, 714 F.2d at 1001; *Powers*, 629 F.2d at 624. This authority has been codified in 18 U.S.C. § 401(3), under which appellants were convicted. The statute provides that

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> * * * * * *
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Rule 42 of the Federal Rules of Criminal Procedure sets forth the procedural requirements for prosecuting criminal

contempt.[1] Part (b) that rule provides for disposition of criminal contempt upon notice and hearing when, as here, the contempt was not committed in the actual presence of the court. Rule 42 is merely procedural, however, and does not purport to vest exclusive authority to initiate contempt charges in the court. *Brown v. United States*, 359 U.S. 41, 51, 79 S.Ct. 539, 547, 3 L.Ed.2d 609 (1959), *overruled on other grounds, Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965); *United States v. Williams*, 622 F.2d 830, 838 (5th Cir.1980) (per curiam), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981); *United States v. Leyva*, 513 F.2d 774, 778 (5th Cir.1975). The power of the grand jury to initiate contempt charges without any prior action by the court has long been recognized. *See Green v. United States*, 356 U.S. 165, 187, 78 S.Ct. 632, 644–45, 2 L.Ed.2d 672 (1958); *Steinert v. United States District Court for the District of Nevada*, 543 F.2d 69, 70–71 (9th Cir.1976); *United States v. Snyder*, 428 F.2d 520, 522 (9th Cir.), *cert. denied*, 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970); *Williams*, 622 F.2d at 838; *United States v. Morales*, 566 F.2d 402, 404 (2d Cir.1977); *Leyva*, 513 F.2d at 778; *United States v. Mensik*, 440 F.2d 1232, 1234 (4th Cir.1971) (per curiam). Although an indictment is not necessary for a criminal contempt prosecution, it is permissible if the notice requirements of Rule 42(b) are satisfied. *Mensik*, 440 F.2d at 1234.

Appellants do not challenge the grand jury's power to return an indictment and thereby to initiate a prosecution. Indeed, they could not, because under 18 U.S.C. § 401, contempt is a criminal offense. Appellants only argue that before the grand jury may perform its historically independent role of bringing an indictment, the court must first consider civil sanctions.

■ We have stated that, although the functions of the grand jury are intimately related to the functions of the court, the grand jury is not and should not be captive to the judiciary. *See Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960); *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). A court's supervisory control of the grand jury is narrowly construed, and should be exercised only when there is a clear basis in fact and law for doing so. *In re Grand Jury Investigation of Hugle*, 754 F.2d 863, 864 (9th Cir. 1985); *United States v. Wilson*, 614 F.2d 1224, 1227 (9th Cir.1980); *Chanen*, 549 F.2d at 1313. Frequent or unnecessary court intervention in grand jury proceedings would impede the grand jury's ability to perform its constitutional mission, which is to clear the innocent and bring to trial those who may be guilty. *See United States v. Dionisio*, 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973); *In re Grand Jury Investigation of Hugle*, 754 F.2d at 864.

■ When the assertion of judicial power is not needed to preserve the integri-

1. Rule 42 provides:

(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the crimi-

nal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

ty of the judicial process and to avoid fundamental unfairness, the legal basis for the exercise of judicial control is absent. *Wilson*, 614 F.2d at 1227. The adoption of a rule that would preclude a grand jury from returning an indictment for criminal contempt until after the court has considered civil contempt sanctions would ignore the rule of judicial noninterference with grand jury proceedings by requiring judicial control of the grand jury when no control is needed. This is not a case in which judicial intervention is permissible because of a clear potential for violation of the rights of the witnesses. *Cf. In re Grand Jury Investigation of Hugle*, 754 F.2d at 865 (case remanded to district court to consider applicability of marital communications privilege to anticipated grand jury testimony). Appellants have no right to refuse to testify. A witness who has been granted immunity and ordered to testify before a grand jury must do so, or risk punishment for criminal contempt. *See generally Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965); *United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677.

The Supreme Court's decision in *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), further supports our conclusion that the dictum in *Shillitani* was not intended to serve as a rule to be followed in every case in which criminal contempt sanctions are imposed. *See also U.S. v. Wilson*, 421 U.S. 309, 321 n. 2 95 S.Ct. 1802, 1809 n. 2, 44 L.Ed.2d 186 (Blackmun, J., concurring). In *Harris*, a witness who had been granted immunity under 18 U.S.C. § 6002 similarly refused to answer certain questions before the grand jury. The witness was then brought before a district judge and asked the same questions. When the witness still refused to answer, the court summarily held him in criminal contempt under Fed.R.Crim.P. 42(a).

The Supreme Court ruled that when the contempt is criminal, consisting of a refusal to testify before a grand jury, the court must proceed under Rule 42(b) with notice and hearing to the defendant rather than summarily under Rule 42(a) because disobedience of the order to testify occurred not in the court's presence, but before the grand jury. Like the Eighth Circuit Court of Appeals in *United States v. Di Mauro*, 441 F.2d 428 (8th Cir.1971),[2] we consider significant the fact that *Harris* was decided during the same term as *Shillitani* and did not suggest that the trial court must first resort to civil sanctions before proceeding under Rule 42(b). *Id.* at 434. In fact, *Harris* appears to suggest just the opposite.

The crucial distinction between *Shillitani* and *Harris* seems to be the purpose of the contempt charge. In *Shillitani*, the court's purpose was coercive, rather than punitive, as the court found to be indicated by the sentence imposed. On the other hand, in *Harris*, the court's purpose was punitive. Thus, because the purpose of a grand jury indictment is not to coerce testimony, that role being exclusively reserved to the courts, *see Brown*, 359 U.S. at 49, 79 S.Ct. at 546, we find *Harris* more analogous to the situation before us.

We conclude from a consideration of the above authorities that the Supreme Court's admonition in *Shillitani* was in-

---

2. In *Di Mauro*, the government requested that the trial court find the defendants in civil contempt, or alternatively, cite them for criminal contempt after defendants refused to testify before the grand jury. The court specifically rejected the civil contempt alternative because of the severity of the defendants' conduct. Consequently, the court directed the government to file an information against the defendants.

Defendants were subsequently convicted of criminal contempt by a jury. On appeal, the Eighth Circuit considered their *Shillitani* argument, and concluded that *Shillitani* "merely requires that the trial court expressly consider the imposition of civil contempt before resorting to criminal contempt and that the record reveal that the civil alternative was considered and rejected. 441 F.2d at 435. In *DiMauro*, contrary to the case before us, the trial court, and not the grand jury, initiated the criminal contempt charges. Thus, *Shillitani* required consideration of civil contempt although the court concluded that criminal sanctions could first be imposed so long as "those sanctions are surrounded by the safeguards of an ordinary criminal proceeding." *Id.* at 433.

tended to apply only when a judge initiates criminal contempt proceedings for the purpose of coercing future compliance with a court order, and not when an independent federal grand jury returns a criminal contempt indictment to punish past violations. *See Universal City Studios, Inc. v. N.Y. Broadway International Corp.,* 705 F.2d 94, 96 n. 1 (2d Cir.1983); *Di Mauro,* 441 F.2d at 433–436. Accordingly, we reject appellants' claim that their convictions must be reversed on the basis of *Shillitani.*

## II.

■ Appellants next claim that their convictions must be reversed because they did not act willfully in disobeying the court's order to testify. We have held that the crime of contempt is established when a defendant willfully disobeys a clear and definite court order of which the defendant is aware. *United States v. Thoreen,* 653 F.2d 1332, 1339 (9th Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982); *United States v. Baker,* 641 F.2d 1311, 1317 (9th Cir.1981); *Powers,* 629 F.2d at 627; *Chapman v. Pacific Telephone and Telegraph Co.,* 613 F.2d 193, 195 (9th Cir.1979). Thus, willfullness is an essential element of criminal contempt.

■ "Willfulness" is defined as "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *Baker,* 641 F.2d at 1317; *United States v. Greyhound Corporation,* 508 F.2d 529, 531–32 (7th Cir.1974). It implies a "deliberate or intended violation, as distinguished from an accidental, inad-

vertent, or negligent violation of an order." *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 782 (9th Cir.1983).

■ Appellants claim that their conduct was not willful because of their good faith reliance upon the advice of counsel not to testify. Because the issue whether good faith reliance on the advice of counsel is a defense to a charge of criminal contempt involves a question of law, our standard of review is de novo. *See Matter of McLinn,* 739 F.2d at 1397. The district court rejected appellants' argument and so do we.

■ Appellants misinterpret the nature of the "good faith" defense to a charge of criminal contempt. Although a defendant's good faith belief that he is complying with the order of the court may prevent a finding of willfulness, good faith reliance on the advice of counsel to disobey a court order will not.[3] *See United States v. Snyder,* 428 F.2d 520, 522–23 (9th Cir.), *cert. denied,* 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970); *see also United States v. Di Mauro,* 441 F.2d at 437.

In *Steinert v. United States,* 571 F.2d 1105 (9th Cir.1978), we considered the good faith defense in a similar context and found that the defendant's disobedience of a court order to answer questions was willful even though he acted in good faith reliance on the advice of a tax accountant. *Id.* at 1108. In doing so, we reasoned that

[t]o hold otherwise would make stultification of a court order impermissibly easy. In litigation frequently the client must assume the risks of his advisor's errors. Appellant's long sustained recalcitrance in this and earlier litigation provides no

---

**3.** The dissent cites *Williamson v. United States,* 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278 (1908), as authority that advice of counsel constitutes a defense in this situation. However, the language quoted from that case was a jury instruction given by the trial judge. The Supreme Court never held that this instruction was in fact correct as it was the defendant, in a trial for falsely subscribing an oath to a document, who was challenging the instruction. In addressing the issue, what the Court said was that

[w]ithout attempting to review in detail the requested charges concerning motive and intent and the effect of advice of counsel, we

think the trial judge *went as far in favor of the accused as it was possible* for him to go consistently with right, and therefore there is no ground for complaint * * * *

*Id.* at 453, 28 S.Ct. at 173 (emphasis added). Furthermore, the Court's holding in the case was based on the entirely different ground that federal law did not require that the defendant swear to the document, and hence no false swearing charge was authorized by law. *Id.* at 462, 28 S.Ct. at 177. Thus, the principle upon which the dissent relies was never adopted by the Supreme Court.

basis for relieving him of these ordinary risks.

*Id.* Here, appellants admitted that they were aware of the district court's compulsion orders and the orders denying their *Gelbard* claims. There is no evidence that appellants believed that their refusal to testify complied with the court's orders. They knew that they could be punished for refusing to obey those orders.[4] Government counsel advised each appellant before the grand jury that his conduct was contumacious and he therefore was subject to possible civil and criminal contempt. Nonetheless, appellants claim that they did not understand that their conduct amounted to criminal contempt. Even if this were true, it is no defense. The critical inquiry is whether the appellants were aware that they were disobeying a lawful court order, not whether they realized the nature of the punishment they could receive for disobeying that order. *See Snyder,* 428 F.2d at 522–23.

Furthermore, we are not persuaded that *Steinert* is factually distinguishable from this case. Although in *Steinert* the defendant relied on a tax accountant's advice while here the erroneous advice was rendered by an attorney, such a distinction was not made by the court in *Steinert.* In fact, the court cited to the *Snyder* decision to support its conclusion that appellant's disobedience was willful. *Steinert,* 571 F.2d at 1108. In *Snyder,* reliance was based on an attorney's advice to disobey the court's compulsion order. 428 F.2d at 522.

Appellants voluntarily chose to follow the erroneous advice of their counsel rather than to testify. To permit them to disobey the compulsion orders in reliance on the advice of their counsel "would in effect do away with the judicial grant of immunity because a witness given immunity could still avoid testifying if his attorney advised him to remain silent." *Id.*

■ Appellants also claim that they lacked willfulness because they expressed a willingness to testify if their *Gelbard* claims were denied on appeal. We agree with the First Circuit Court of Appeals that this argument is untenable.[5] *United States v. Nightingale,* 703 F.2d 17, 19 (1st Cir.1983). Appellants' intent to disobey the orders of the district court was clearly established. They were not relieved of their duty to testify simply because they wished to appeal the denial of their *Gelbard* motions. Nor could they refuse to obey because they intended later to challenge the command. As the Supreme Court has directed, the proper course of action, unless and until the court's order is invalidated by an appellate court, was for appellants to comply and cite the order as reversible error should an adverse judgment result. *See Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975); *United Mine Workers,* 330 U.S. at 294, 67 S.Ct. at 696; *Chapman,* 613 F.2d at 197.

4. Thus, we disagree with the dissent that appellants believed that their refusal to testify in the face of court orders requiring such testimony was lawful. The dissent concedes that appellants were aware that their refusal constituted *disobedience* of the court's orders. In refusing to testify when commanded to do so by unambiguous orders, appellants had to know that their conduct was in clear violation of the orders and thus contrary to law. Their position was that the federal court would not punish them for their recalcitrance, and not that a federal court would find that they were not recalcitrant. As one appellant testified, "I just believed * * * that the only way we can have this resolved * * * [is] to get charged with contempt * * * * *" Contempt is a knowing and willing violation of a valid court order. This testimony certainly suggests that appellants were aware that their conduct was not lawful, since they anticipated, at the minimum, a contempt citation by the district court. If everyone was free to disobey lawful court orders until the orders were ratified by some other tribunal, the result would be anarchy and disorder. As previously stated, the purpose of criminal contempt is to vindicate the court's authority in the face of such contumacious acts. *See Asay,* 614 F.2d at 659.

5. The First Circuit observed that no court has ruled that criminal contempt may not be found until "an appellate court passes on the merits of the reason for a defendant's refusal to obey a Court's order to testify before a grand jury." 703 F.2d at 19.

### III.

 Finally, appellants assert that their indictments for criminal contempt indicate vindictive motives on the part of the prosecution and the grand jury since civil contempt sanctions were not first pursued. The district court found no vindictive prosecution. We review this finding for an abuse of discretion, *United States v. Gallegos-Curiel,* 681 F.2d 1164, 1171 n. 6 (9th Cir.1982), and find none.

Appellants were initially called before the grand jury in October 1981. Their first *Gelbard* motions were denied in April 1982 and in December of that year, immunity and compulsion orders were issued. In January 1983, appellants filed a second set of *Gelbard* motions and appeared before the grand jury for the first time, but refused to testify. In March 1983, the second *Gelbard* motions were denied and the appellants appeared before the grand jury for a second time. Again, they refused to testify. In April, the government moved for the imposition of civil contempt sanctions and an order to show cause was issued. That motion was never ruled upon by the district court.

In August 1983, appellants were again ordered to testify before the grand jury. On September 20, they made their third appearance and, as twice before, refused to answer. Appellants subsequently were indicted for criminal contempt in January 1984. Under such circumstances, we find that the appropriateness of criminal contempt sanctions can hardly be questioned.

In *Gallegos-Curiel,* 681 F.2d at 1169, we stated that "the appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights." This is not such a case. The prosecutor was amply justified in seeking criminal contempt sanctions in light of appellants' persistently contumacious conduct.

### CONCLUSION

The district court was not required under *Shillitani* to consider the appropriateness of civil contempt sanctions before the grand jury returned indictments for criminal contempt. Because appellants were aware of the court's compulsion orders, they cannot claim that their good faith reliance on the advice of counsel negates the element of willfulness required for their convictions. Nor was the willfulness element negated by appellants' willingness to testify should their *Gelbard* claims be denied on appeal. Finally, the district court did not abuse its discretion in failing to find prosecutorial vindictiveness.

The convictions are AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

The majority articulates the "critical inquiry" in its review of appellants' conviction for criminal contempt as "whether the appellants were aware that they were disobeying a lawful court order" in refusing to testify before the federal grand jury. Finding that appellants were so aware, the majority affirms their convictions. The majority thus fails to make the critical determination that is required in order to sustain a conviction on any charge of criminal contempt: that the appellants acted *willfully* in disobeying the court order. Such a determination entails finding beyond a reasonable doubt that appellants knew that their refusal to testify was wrongful. Equally important, the facts of this case foreclose any such finding. Because the majority affirms appellants' conviction under an improper legal standard, and in so doing ignores the facts of appellants' case, I respectfully dissent.

Appellants were subpoenaed in October 1981 to appear before a special grand jury investigating alleged diversion of funds from casino properties. Prior to their scheduled appearance, appellants filed a *Gelbard* motion under 18 U.S.C. § 3504 (1982) and *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), for disclosure of any illegal electron-

ic surveillance to which they were or had been subject.[1] The government consented to a continuance of the grand jury appearances until the court had ruled on appellants' motion.

In opposition to the *Gelbard* motion, the government stated that appellant Sammarco's conversations had been intercepted pursuant to court-authorized electronic surveillance in 1978, but that, according to the FBI, appellants Armstrong and Williams' conversations had never been intercepted in Nevada. The government opposed any further disclosures of electronic surveillance searches.

The district court held an evidentiary hearing on appellants' motion, and on April 5, 1982, entered an order denying the motion for failure to make a *prima facie* demonstration of illegal electronic interception.

Eight months later, the government again requested appellants to appear before the special federal grand jury. On December 27, 1982, the district judge signed immunity and compulsion orders for appellants pursuant to 18 U.S.C. § 6001 (1982). Appellants and their counsel appeared before the grand jury on January 4, 1983, and filed a second *Gelbard* motion. This motion alleged the occurrence of specific instances of electronic surveillance during the eight month period subsequent to the evidentiary hearing on the first *Gelbard* motion. At the grand jury, the prosecution informed appellants of the December immunity and compulsion orders. Appellants refused to testify, however, pending disclosure of the alleged illegal electronic surveillance.

The district court denied the second *Gelbard* motion on March 7, 1983, for failure to make a *prima facie* showing of illegal surveillance.

Appellants appeared before the grand jury on March 28, 1983. Though again informed by the prosecution of the immunity and compulsion orders, appellants re-fused to answer the jury's questions on the ground that the questions were the product of illegal electronic surveillance.

Upon the government's motion, the district court issued an order on April 21, 1983 to show cause why the appellants should not be held in civil contempt pursuant to 28 U.S.C. § 1826 (1982). Appellants responded to the order with, *inter alia*, a request that the court reconsider its denial of the second *Gelbard* motion. In their motion, appellants plainly stated their position that in order to contest the court's adverse ruling, they must refuse to testify, be cited for contempt, and raise the *Gelbard* issue on their appeal from the contempt citation.

The district court entered an order on August 31, 1983, denying appellants' motion for reconsideration of its *Gelbard* ruling and ordering appellants to reappear and testify before the grand jury. The court did not then, nor did it subsequently, rule on the government's civil contempt motion. The order did not state that appellants would be in contempt should they refuse to testify. Nor did the district judge so advise them by any other means.

Appellants appeared before the grand jury on September 20, 1983. The prosecution reminded them of their respective compulsion orders and read the court's order of August 31, 1983. The prosecution warned appellants that a refusal to testify could result in civil and/or criminal contempt sanctions. Appellants again refused to testify on the advice of counsel.

The grand jury indicted appellants on January 10, 1984, for criminal contempt under 18 U.S.C. § 401(3) (1982) and Fed.R. Crim.P. 42(b), for willfully refusing to testify on September 20, 1983. Appellants were then tried before a different district judge and were convicted of criminal contempt on August 31, 1984. Each was fined $500.

At the contempt trial, both appellants and their counsel testified as to appellants'

---

1. Under *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), witnesses may invoke 18 U.S.C. § 2515, which prohibits the disclosure to a grand jury of evidence obtained by an illegal wiretap, as a defense to a contempt charge.

refusal to answer the grand jury's questions. There is no dispute as to the facts. The testimony at trial reveals that counsel advised appellants prior to each grand jury appearance that the district court had incorrectly denied their *Gelbard* motions, and that the procedure for challenging that denial required that they refuse to testify before the grand jury, be cited for contempt, and ask for a stay of the contempt citation pending appeal of the *Gelbard* motion. Counsel further told them that if the court granted the stay, they would take the appeal; if the court denied the stay, they would then be obligated to testify. Counsel also advised appellants that if his advice were followed appellants would not at any point be in contempt of court. He told them that if the court granted the stay, they would not be in contempt while the appeal was pending; if the court denied the stay, they would testify, thus avoiding any act of contempt; and while their request for a stay was pending before the trial court, their refusal to testify would not be contumacious, since such refusal was a prerequisite to appellate review of the *Gelbard* motions:

> I told appellants that disobedience of the August 31, 1983 order would not be an illegal act and that it was a necessary predicate to even asking the judge to let me go to the Court of Appeals, because otherwise we didn't get there.

Appellants' testimony indicates that they understood counsel's explanation of the appeals procedure, and that their refusal to testify was undertaken pursuant to that explanation. Most importantly, appellants' testimony shows that they believed that their refusal to testify was lawful:

> Q: As you were reading [the statement explaining your refusal to testify] to the grand jury, did you believe that you were committing a criminal act?
>
> A: No, I didn't.
>
> Q: What did you think you were doing, sir?
>
> A: It seemed to be very legal to me, not being a lawyer.... I didn't believe that we were breaking the law at any time. I

just thought that counsel knew more than I did. The way he explained it to us, we just had to follow one step and another. He said in order for us to get a ruling on this, that we would have to refuse to answer.

> Q: Did you believe when you read the statement to the grand jury on September 20th, 1983, that Mr. Sherman had prepared for you, that you were violating the law when you did that?
>
> A: Not per se. I just believed what he told me, that the only way we can have this resolved—he says, we have to get charged with contempt before he can take it to the Ninth Court of Appeals [sic].

On the basis of the evidence presented at trial, the district court below found that appellants followed counsel's advice in "complete good faith." The court also found credible appellants' testimony that they would have testified before the grand jury had the trial court ruled against them on the contempt motion. Nevertheless, he found them in criminal contempt.

Title 18 U.S.C. § 401(3) gives a federal court the power to punish as a crime "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." "[C]riminal contempt requires a contemnor to know of an order and willfully disobey it.... Willfulness and awareness of the order must be shown beyond a reasonable doubt." *United States v. Baker*, 641 F.2d 1311, 1317 (9th Cir.1981) (citations omitted); *see also United States v. Powers*, 629 F.2d 619, 627 (9th Cir.1980); *Chapman v. Pacific Telephone and Telegraph Co.*, 613 F.2d 193, 195 (9th Cir. 1979).

We have defined "willfulness" as "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *Baker*, 641 F.2d at 1317.

Appellants' understanding, however incorrect, that their refusal to testify was lawful, negates the willfulness element of criminal contempt. "Good faith pursuit of a plausible though mistaken alternative is antithetical to contumacious intent, how-

ever unimportant it may be in the context of civil contempt." *In re Brown,* 454 F.2d 999, 1007 (D.C.Cir.1971).

The district court never corrected appellants' misunderstanding of the legal character of their refusal to testify. The court did not, in its August 31, 1983 order, instruct appellants on their legal duty to testify, nor did it inform them, in that order or otherwise, that they would be in contempt of court if they refused to comply. Although the *prosecution* advised appellants at the September 20, 1983 grand jury proceedings that their refusal to testify would be contumacious, appellants were justified in relying on the advice of their own, rather than opposing, counsel, absent an indication from *the court* that their counsel's advice was erroneous or based on an incorrect construction of the law.

Contrary to the majority's view, I believe the proper rule to be the following: A defendant may not be convicted of willfully disobeying an order to testify, where he relies in good faith on counsel's advice that such disobedience is lawful and the court has not instructed him as to his duty to obey its order.[2] The principle on which I rely was initially set forth in *Williamson v. United States,* 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278 (1908):

> [I]f a man honestly and in good faith seeks advice of a lawyer as to what he may lawfully do ... and fully and honestly lays all the facts before his counsel, and in good faith and honestly follows such advice, relying upon it and believing it to be correct, and only intends that his acts shall be lawful, he could not be convicted of a crime which involves willful and unlawful intent; even if such

advice were an inaccurate construction of the law.

*Williamson,* 207 U.S. at 453, 28 S.Ct. at 173.

The majority is unsuccessful in its attempt to dispose of the principle enunciated in *Williamson.* While it is true that the holding in that case did not address the advice of counsel defense, the Court nevertheless approved of the principle in the language quoted by the majority. *Supra,* at 706 n. 3. The Eighth Circuit has recognized that approval by citing *Williamson* for the proposition that an advice of counsel instruction "is warranted only where the crime charged involves willful and unlawful intent." *United States v. Powell,* 513 F.2d 1249, 1251 (8th Cir.1975).

The majority's prohibition of an advice of counsel defense in criminal contempt cases ignores the willfulness element of the crime and transforms criminal contempt into a general intent offense. The majority does not find that appellants knew their conduct to be unlawful, but rather stops short at the inquiry whether appellants knew that they were disobeying a court order.[3] This case demonstrates that the two findings are not necessarily synonymous. Abiding by the willfulness element of criminal contempt requires that we inquire into appellants' belief about the wrongfulness of their conduct; that requirement necessitates in turn that we permit an advice of counsel defense where, as here, a defendant establishes both good faith reliance on counsel and the absence of corrective instruction from the court. Permitting an advice of counsel defense under the present circumstances simply acknowledges the proposition that where a person

---

**2.** In a criminal proceeding, a court is required to ensure that a defendant understands the consequences of pleading guilty before accepting a guilty plea. Fed.R.Crim.P. 11(c), (d); *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). It is no more onerous to require a court to ensure that a witness understands the consequences of disobeying a court order, especially since disobedience could lead to criminal liability.

**3.** The majority's characterization of appellants' argument as "whether they realized the nature of the punishment they could receive for disobeying" the court order is both inaccurate and misleading, since it obscures appellants' real complaint. Appellants nowhere argue that they did not understand the nature of the punishment for contempt. They challenge their convictions on the ground that they believed their conduct to be lawful, not on the ground that they believed that they could not be punished for unlawful conduct.

acts with a reasonable good faith belief that his or her conduct is proper and lawful, he or she cannot be convicted of acting with the belief that that conduct is wrongful.

Permitting an advice of counsel defense against a criminal contempt charge would not, as the majority asserts, "make stultification of a court order impermissibly easy," *supra*, at 706 (quoting *Steinert v. United States*, 571 F.2d 1105, 1108 (9th Cir.1978)), or "in effect do away with the judicial grant of immunity." *Id.* (quoting *United States v. Snyder*, 428 F.2d 520, 522 (9th Cir.), *cert. denied* 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970)). The primary mechanism available to a court for coercing compliance with its lawful orders is the civil, rather than the criminal, contempt power. Civil contempt is remedial, whereas criminal contempt is punitive. *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Advice of counsel is no defense to civil contempt, since civil contempt contains no willfulness element. "Where contempt consists of a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance." *Id.*, at 370, 86 S.Ct. at 1535; *McCrone v. United States*, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108 (1939). An appellate court must act upon an appeal from an order of confinement within 30 days from the filing of the appeal. 28 U.S.C. § 1826(b) (1982).

An expeditious procedure exists, therefore, for compelling compliance with a court order, without altering the standard for criminal contempt. That procedure would in fact have sufficed to compel compliance in the present case. The court below noted that the criminal contempt proceedings would have been avoided altogether, had the judge overseeing the casino investigations acted upon the civil contempt motion. It accepted as true appellants' statements that they would have testified had the original judge held them in contempt and then denied their request for a stay.

There are further reasons why permitting the defense would not eviscerate immunity and compulsion orders. Few attorneys will advise their clients to disobey a court order simply in order to afford them an advice of counsel defense. The attorney-client privilege is waived when a client testifies about the advice he received, and the attorney could then be compelled to take the stand himself, either at the contempt hearing, or at some other proceeding. Moreover, the giving of such advice would subject the attorney to the possibility of contempt charges or sanctions. *See Maness v. Meyers*, 419 U.S. 449, 460, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975); *In re Watts*, 190 U.S. 1, 29, 23 S.Ct. 718, 725, 47 L.Ed. 933 (1903). Finally, the result proposed here places in the court that grants immunity to a witness the power to foreclose an advice of counsel defense. As long as the court instructs a witness that a refusal to testify will be contumacious, that witness may not invoke the advice of counsel defense against a charge of willfully disobeying a court order.

The majority's hyperbolic warning that "anarchy and disorder," *supra*, at 707 n. 4, would follow from a reversal of appellants' conviction is clearly unwarranted. As stated above, the court overseeing the investigations could have ruled on the government's civil contempt motion and used its civil contempt power against the witnesses to compel compliance with its order; when the government became impatient with the court's failure to act on its motion it took the most unusual course of resorting to criminal contempt instead of renewing its request for a ruling. Secondly, the court could have instructed appellants on the unlawfulness of their conduct, thereby eliminating any possibility that defendants could avail themselves in good faith of an advice of counsel defense. The district judge gave no such instruction and the government requested none, again apparently preferring for reasons that the record does not reveal to take its chances with the more drastic and unusual criminal contempt process. It is unlikely that the events that occurred in this case will be

replicated with any regularity in the future. Thus, the majority's fears of "anarchy and disorder" seem, to say the least, to be somewhat excessive.

The majority cites *United States v. Snyder, supra,* and *Steinert v. United States, supra,* for the proposition that good faith reliance on the advice of counsel to disobey a court order will not prevent a finding of willfulness. Neither case, however, justifies the majority's refusal to follow the rule described in *Williamson.*

The statements on the advice of counsel defense in *Snyder* do not have the force of law. By the *Snyder* court's own admission, the advice of counsel issue was not properly before it. *Snyder,* 428 F.2d at 522. Its subsequent comments on the issue were, therefore, wholly gratuitous.[4]

*Steinert v. United States,* 571 F.2d 1105 (9th Cir.1978), is inapposite on its facts. The defendant there argued that reliance on a tax accountant's advice to disobey a court order negated the willfulness of that disobedience. The court properly rejected the argument. Tax accountants do not hold themselves out as experts on legal procedure; anyone who relies on their legal advice in that area does so at his or her own risk.

Our analysis in *Steinert* supports, rather than contravenes, the availability of an advice of counsel defense in the present case. We found that Steinert's "long sustained recalcitrance in this and earlier litigation provide[d] no basis for relieving him of the[ ] ordinary risks" of "his advisor's errors." *Steinert,* 571 F.2d at 1108. The implication of the opinion is that under different circumstances a legitimate basis for relief would exist. We said in *Steinert*: "At some point the taxpayer accepts bad advice at his peril. We have no difficulty in finding that point reached here." *Id.* Steinert had passed the point where he

could justifiably rely on his accountant's advice, because he had "been before [the appellate] court previously," and had there been advised that he could not avoid a summons by a blanket claim of privilege. *Id.* at 1106.

Here the facts are substantially different from those in *Steinert* and an opposite result is required: At the September grand jury hearing, appellants had not reached the point of accepting bad advice at their peril. They had never been advised by a court that their refusal to testify would be contumacious. They unsuccessfully sought to invoke a procedure they believed would lead to an appellate determination of their claim of privilege, and reasonably expected that as a prerequisite thereto the lower court would rule on the government's civil contempt motion. Thus, *Steinert* supports appellants' contention that they may rebut the willfulness element of criminal contempt with an advice of counsel defense.

Because the majority improperly rejects an advice of counsel defense to criminal contempt and fails to find that appellants knew that their refusal to testify was wrongful, I respectfully dissent from Part II of the Opinion. I would reverse appellants' convictions for criminal contempt.

---

**4.** Even were we to accord *Snyder* authoritative status, it would not resolve the issue presented in this case. The advice which the *Snyder* court found irrelevant to a contempt charge was simply to "disobey the court's order." *Snyder,* 428 F.2d at 523. Appellants, on the other hand, were advised, without correction from the court, that disobedience of the court's order was a lawful and necessary prerequisite to obtaining appellate review. *Snyder* did not purport to discuss whether such advice negates the willfullness element of a criminal contempt proceeding.